MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MARK C. HUMPHREY (SBN 291718)
  mxh@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Attorneys for Plaintiff
Riot Games, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RIOT GAMES, INC., a Delaware Corporation;<br><br>        Plaintiff,<br><br>      v.<br><br>RIOT SQUAD ESPORTS LLC, a Delaware limited liability corporation and Does 1 through 10, inclusive,<br><br>       Defendants. | CASE NO. 2:19-cv-8626<br><br>**COMPLAINT FOR:**<br><br>**(1) INFRINGEMENT OF FEDERALLY REGISTERED MARK [15 U.S.C. § 1114];**<br><br>**(2) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)];**<br><br>**(3) UNFAIR COMPETITION [Common Law and Cal. Bus. & Prof. Code § 17200];**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Riot Games, Inc. ("Riot") avers as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark infringement and false designation of origin under the federal Lanham Act, and unfair competition under California law. Riot brings this action to put a stop to the blatant and willful appropriation of one of Riot's most valuable assets – its well-known RIOT brand name – by a professional, for-profit, electronic sports (or "esports") organization whose purported goal is to "build the gold standard for the next generation of competitive [video] gaming."

2.     Riot is among the world's foremost developers and publishers of competitive online video games.  Riot also is at the vanguard of the burgeoning esports business.  Riot's flagship product is the hugely popular and highly competitive multiplayer online game "League of Legends" ("LoL").  Tens of millions of people worldwide play LoL, making it one of the world's most famous and popular competitive esports.  Riot's LoL is played seriously and competitively by amateurs and professionals in a variety of Riot-sponsored, licensed, or branded competitions, including in professional leagues, intercollegiate leagues, and major international competitions such as the annual "World Championship" (or "Worlds") event.  Riot-sponsored or Riot-organized LoL events have been played in major sports arenas such as the Staples Center in Los Angeles, and have been watched by millions of people live and on televised online broadcasts.  Riot esports events have received international recognition, including dozens of industry awards.  Based on Riot's lengthy, continuous, and uninterrupted use of its RIOT and RIOT GAMES marks, the RIOT brand has become synonymous with Riot, video games, and competitive esports leagues, teams, and competitions.

3.     With full knowledge of Riot and its trademark rights in the words RIOT and RIOT GAMES in connection with video games and esports, Defendant

Riot Squad Esports LLC ("Riot Squad") has unfairly and unlawfully adopted and exploited the RIOT brand name in connection with its marketing, advertising, and promotion of a nascent esports organization that it claims was "founded by gamers, for gamers."  Riot Squad apparently hopes and intends that by its use of the RIOT brand name, consumers will mistakenly believe that its esports organization is in some manner associated with, sponsored or endorsed by, or otherwise affiliated with Riot and its hugely popular products and services.

4.     Through its conduct, Riot Squad has willfully created circumstances whereby members of the public are likely to be led to incorrectly believe that the goods offered by Riot Squad are authorized by, sponsored by, or affiliated with Riot, its well-known marks, and the products provided thereunder.  The Court should enjoin any further use of the RIOT name by Riot Squad, and Riot should be compensated for the damage done to its brand as a result of Riot Squad's conduct.

## JURISDICTION AND VENUE

5.     This is an action arising in part under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and under California statutory and common law.

6.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b) in that it involves an action arising under the Lanham Act.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Riot Squad is subject to personal jurisdiction in the state of California because the unlawful conduct complained of herein has taken place in and causes injury in this judicial district, and because Riot Squad (1) has directed its activities at Riot and its trademarks; (2) transacts business in this judicial district (including by playing matches with the National PUBG League at the OGN Super Arena in Manhattan Beach); (3) promotes its services in the State of California and in this judicial district (including via recent promotional activities at TwitchCon in San

1   Diego); (4) enters into contracts and partnerships with entities located in the State

2   of California and in this judicial district; and (5) offers or intends to offer products

3   and merchandise for sale in the State of California and in this judicial district.

4           8.      Venue is proper in this judicial district pursuant to 28 U.S.C.

5   § 1391(b) in that a substantial part of the events giving rise to this Complaint

6   occurred in this judicial district.

7

8                         **THE PARTIES**

9           9.      Riot is a corporation duly organized and existing under the laws of the

10   State of Delaware, with its principal place of business in Los Angeles, California.

11          10.     Riot is informed and believes, and on that basis avers, that Riot Squad

12   is a limited liability company organized and existing under the laws of the State of

13   Delaware, having its principal place of business in Chicago, Illinois.

14          11.     The true names and capacities, whether individual, corporate,

15   associate, or otherwise, of the defendants sued herein as Does 1-10 inclusive, are

16   unknown to Riot, which has therefore sued said defendants by such fictitious

17   names.  These defendants may include individuals whose real identities are not yet

18   known to Riot, but who are acting in concert with one another in committing the

19   unlawful acts alleged herein.  Riot will seek leave to amend this complaint to state

20   their true names and capacities once said defendants' identities and capacities are

21   ascertained.  Riot is informed and believes, and on that basis avers, that all

22   defendants sued herein are liable to Riot as a result of their participation in all or

23   some of the acts set forth in this complaint.  (All of the aforementioned defendants

24   collectively are referred to herein as "Defendants.")

25          12.     Riot is informed and believes, and on that basis avers, that at all times

26   mentioned in this complaint, each of the Defendants was the agent, alter ego, or

27   representative of each of the other Defendants and, in doing the things averred in

28   this Complaint, was acting within the course and scope of such agency.

Mitchell
Silberberg &
Knupp LLP

11464056.1

4

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Riot Games And Its Well-Known RIOT Trademark

13.    Riot is among the world's leading video game developers and publishers, best known for its enormously popular game "League of Legends" ("LoL"). LoL is a fast-paced, highly competitive online multiplayer video game. In LoL, two five-player teams of powerful champions, each with a unique design and playstyle, battle head-to-head across computer-generated battlefields in a variety of game modes and types.

14.    Riot, with its partners and affiliates, develops, publishes, markets, advertises, distributes, maintains, and services LoL in numerous countries throughout the world.  As a result, LoL is one of the best-known competitive video games in the world, and is played and enjoyed by millions of people in the United States and around the globe.

15.    Riot also is one of the pioneers of the rapidly growing electronic sports ("esports") industry.  LoL was among the first multiplayer video games to spawn international professional and semi-professional esports leagues and teams. Indeed, LoL was among the first games to become a true spectator sport.  For nearly a decade Riot has sponsored, organized, operated, and/or licensed numerous competitive esports events and tournaments.  The most prominent of these is the annual LoL World Championship (or "Worlds") event, in which more than 100 teams from around the world compete for a multi-million dollar prize pool.  In 2018, nearly 100 million people watched the World Championship Finals.  The Finals were broadcast in 19 different languages across more than 30 platforms and television channels, including ESPN, Twitch, YouTube, TNT, the SyFy network and Facebook.

16.    Other major esports competitions or leagues sponsored and organized by Riot are the Mid-Season Invitational, the Rift Rivals, and the All-Star Event. All of these events are broadcast around the world and viewed by tens of millions

Mitchell
Silberberg &
Knupp LLP
11464056.1

5

of people.  In addition, Riot sponsors, hosts, organizes, and/or licenses dozens of regional professional, semi-professional, and collegiate LoL leagues and competitions such as the Oceanic Pro League ("OPL"), the North American Academy League, and College League of Legends.  Professional esports reporters and fans all over the world regularly report on, write blogs about, or engage in online discussions about Riot esports events, LoL teams, and popular esports athletes.

17.    Riot's esports events have won countless industry awards and accolades, including the 2018 Sports Emmy for Outstanding Live Graphic Design. In 2019, Riot's LoL Worlds event received the SPIA Asia Award for Best Esports Event of the Year, the Game Awards for Best Esports Event, and the #VALUE! Award for Event of the Year.  These awards have made Riot one of the preeminent and most respected providers of esports goods and services.

18.    Since its inception in 2006, Riot has consistently, and without interruption, used in commerce the word mark RIOT in connection with all of its interactive entertainment, esports and related products and services.  Sometimes the RIOT mark is accompanied by or included as part of a distinctive logo such as those set forth below:



19.    Examples of Riot's prominent and consistent use of the RIOT name and logo include but are not limited to the following:

Mitchell
Silberberg &
Knupp LLP
11464056.1

1              (a)     The RIOT name and logo has been and is displayed
2      prominently and consistently on the official LoL website in the United States
3      (na.leagueoflegends.com).  All LoL players must visit the LoL website to
4      download the LoL game software, which is required to play LoL.

5              (b)     The RIOT name and logo has been and is displayed
6      prominently and consistently on and in the LoL game itself, including on the
7      screen displayed when the game is launched and on the Windows or MacOS file
8      folder on which the LoL game software is located.

9              (c)     The RIOT name and logo has been and is displayed
10     prominently and consistently in connection with all major LoL tournaments,
11     including the LoL World Championships.

12             (d)     The RIOT name and logo has been and is displayed
13     prominently and consistently on or in connection with (including on the hang tags,
14     labels and packaging of) a variety of merchandise related to competitive gaming
15     and esports, such as clothing and apparel (such as T-shirts, hats, sweatshirts, and
16     jackets), bags and backpacks, figurines, mousepads, mugs, and gift cards.

17     20.    Riot has invested millions of dollars and enormous time, effort, and
18     resources developing and promoting its RIOT name and logo, particularly in
19     connection with video games and esports.  In addition, Riot has received extensive
20     unsolicited media and news reporting about its esports business, including in
21     mainstream publications such as the *New York Times,* the *Los Angeles Times,* the
22     *Washington Post,* the *Hollywood Reporter*, *CNN*, *ESPN, Reuters, CNBC, Forbes,*
23     *Variety,* and *BBC News*.

24     21.    As a result of the foregoing, the RIOT name and logo has become
25     known throughout the United States and the world by consumers, purchasers and
26     members of the public as signifying interactive entertainment, esports leagues and
27     events, and related products and services originating from Riot.  Riot has acquired
28     an enormously valuable reputation and goodwill among the public as a result of

Mitchell
Silberberg &
Knupp LLP
11464056.1

7

1    such association.  Indeed, the word RIOT has become synonymous in the minds of

2    the relevant consuming public with esports and video game competitions.

3        22.    In addition to its common law trademarks in the RIOT name and logo,

4    Riot is the owner of numerous U.S. registrations in the U.S. Patent and Trademark

5    Office ("PTO") for the RIOT and RIOT GAMES word marks and logos, including

6    Registration Numbers 4,597,374; 4,641,399; 4,109,440; 4,667,930; and 4,233,498.

7    Among the goods and services encompassed by these registrations are

8    entertainment services, clothing, toys and games, and arranging and conducting

9    esports competitions.  Certain of these registrations have been deemed

10   incontestable pursuant to 15 U.S.C. § 1065.  Riot's common law and federally

11   registered trademarks are referred to collectively herein as the "RIOT Marks."

12       23.    The RIOT Marks are among Riot's most valuable assets, and have

13   developed an enormous amount of goodwill among consumers and members of the

14   public, who associate Riot synonymously not only with LoL, but with esports as a

15   whole.  Riot regularly takes steps to protect its valuable RIOT Marks and enforces

16   its rights against those who seek to trade off the goodwill associated with these

17   marks.

18

19              Defendants and Their Infringing Use Of The RIOT Trademark

20       24.    Riot is informed and believes, and on that basis avers, that in or about

21   March 2019, Defendants, with full knowledge of Riot's prior use of the RIOT

22   name and trademark, created a professional esports league known as "Riot Squad."

23   Riot Squad describes itself on its website as a "professional Esports organization

24   founded by gamers, for gamers," whose "mission is to build the gold standard for

25   the next generation of competitive gaming."  Riot Squad boasts that in its first year

26   of operation, it has built "exciting partnerships" with a variety of consumer brands

27   that appeal to video gamers and esports spectators such as Grubhub, RXBar,

28   Limitless caffeinated sparkling water, and Sublime sports apparel.

Mitchell
Silberberg &
Knupp LLP
11464056.1

8

25.     Riot is informed and believes, and on that basis avers, that since the creation of Riot Squad, Defendants have done business under the names RIOT and RIOT SQUAD and have extensively promoted and advertised their organization using both of these names, sometimes (but often not) accompanied by a logo that emphasizes the word RIOT:



26.     Riot is informed and believes, and on that basis avers, that Riot Squad's sole business is to recruit and enter into exclusive agreements with gamers who compete professionally or wish to compete professionally in esports tournaments and matches.  Riot Squad claims that it has signed "incredibly talented teams" to compete in tournaments involving a number of well-known video games (some of which compete with LoL) such as *Fortnite*, *Counter-Strike: Global Offensive*, *Rainbow Six: Siege*, and *Apex Legends*.  Riot Squad teams compete in a variety of esports events under the team name and brand "Riot Squad."

27.     Riot is informed and believes, and on that basis avers, that Defendants' Riot Squad organization began in Chicago, but Defendants claim that they will continue to grow the reach of its organization through its scouting and player development.  Thus, Riot Squad teams have competed in high-profile professional esports tournaments and matches around the country (and the world), including at TwitchCon in San Diego, the Fortnite Champion Series, the MSI Gaming Arena 2019 in New York, the ECS Pinnacle Cup, and with the National PUBG League in Manhattan Beach.  Members of Riot Squad teams appear at these events or otherwise promote the Riot Squad brand by wearing clothing emblazoned with the word RIOT, as illustrated below:

1
2
3
4
5
6
7
8



9

10      28.     Riot is informed and believes, and on that basis avers, that Defendants

11   extensively have marketed and advertised their Riot Squad organization throughout

12   the United States, including on social media websites such as Facebook, Instagram,

13   and Twitter, at live esports events, and on the official Riot Squad website.

14   Defendants also maintain a YouTube page where they broadcast video game

15   matches engaged in by Riot Squad teams.  Defendants' marketing activities

16   consistently use the "Riot" brand name, often without the word "squad" or without

17   the "Riot Squad" logo.  Additionally, Riot is informed and believes, and on that

18   basis avers, that Defendants intend to offer merchandise, including clothing,

19   bearing the words RIOT or RIOT SQUAD.

20      29.     Riot is informed and believes, and on that basis avers, that

21   Defendants' use of the RIOT and RIOT SQUAD marks in connection with the

22   advertising, promotion, and sale of their products and services has caused and/or is

23   likely to cause purchasers and potential purchasers to falsely believe that

24   Defendants' products and services are associated with, approved, licensed, or

25   sponsored by Riot or that Riot participated in the creation of Defendants' products

26   and services or was otherwise consulted or involved with those products and

27   services.

28

Mitchell
Silberberg &
Knupp LLP

11464056.1

30.     Based on the foregoing, Riot is informed and believes, and on that basis avers, that in adopting and using the RIOT SQUAD name—particularly in connection with the esports industry with which Riot has become synonymous— Riot Squad knew of Riot's brand and the goodwill associated therewith and intended to appropriate and trade off that brand and its goodwill.  Riot Squad intentionally used the RIOT Marks to confuse and mislead consumers into believing that its esports organization either is Riot, or is associated with, affiliated with, or sponsored by, Riot.  This is particularly apparent not only due to the fact that both Riot and Riot Squad occupy the same specific sector of the video game industry, but also because Riot Squad's apparent mission statement—to create an esports organization "by gamers, for gamers"—mirrors the guiding principle on which Riot was founded more than a decade ago, and with which it continues to be identified to this day.

## **FIRST CLAIM FOR RELIEF**
### **FEDERAL TRADEMARK INFRINGEMENT**
### **(15 U.S.C. § 1114)**

31.     Riot incorporates herein by reference the averments of paragraphs 1 through 30 as though fully set forth herein.

32.     Riot is the owner of all right, title, and interest in the RIOT Marks and has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

33.     With actual and constructive notice of Riot's federal trademark registrations and of Riot's extensive and continuous use of the RIOT Marks, Defendants have used, and are continuing to use, their confusingly similar mark and name (the "Infringing Marks") in the United States upon goods and services closely related to the goods and services in connection with which Riot uses its RIOT Marks.

Mitchell
Silberberg &
Knupp LLP

11464056.1

11

34.     Defendants' use of the Infringing Marks, including in connection with operating an esports organization (including but not limited to teams and leagues), organizing esports competitions, engaging in marketing and promotional partnerships, and selling clothing and other apparel with the RIOT brand name, has caused and/or is likely to cause confusion, deception, and mistake among consumers.  Buyers and persons who encounter Defendants' esports teams and leagues (either in person or online) or encounter individuals wearing Defendants' apparel emblazoned with the Infringing Marks will think that these goods and services are licensed or approved by Riot.  This includes initial interest confusion, confusion at the time of sale, and post-sale confusion.  In actual fact, Riot does not authorize Defendants' use of the Infringing Marks on any of its goods or services, and strongly objects thereto.

35.     Defendants know that their use of the Infringing Marks is infringing, have reason to know that it is infringing, and/or have been recklessly indifferent to the fact that such use was and is infringing.

36.     Defendants' acts have caused or are likely to cause, unless restrained by this Court, Riot and the public to suffer great and irreparable damage and injury through, *inter alia*, (a) a likelihood of confusion, mistake, and deception among the relevant purchasing public and trade as to the source of the infringing products and services; and (b) the loss of Riot's valuable goodwill and business reputation symbolized by its RIOT Marks.  Riot has no adequate remedy at law.

37.     Defendants' continued and knowing use of the RIOT Marks without Riot's consent or authorization constitutes intentional infringement of Riot's federally registered RIOT Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and renders this an "exceptional case" under 15 U.S.C. § 1117(a). Based on such conduct, Riot is entitled to injunctive relief as well as monetary damages, and other remedies provided by Sections 1116, 1117, and 1118,

1    including Defendants' profits, treble damages, reasonable attorneys' fees, costs and

2    prejudgment interest.

3

4                              **SECOND CLAIM FOR RELIEF**

5                           **FALSE DESIGNATION OF ORIGIN**

6                                **(15 U.S.C. § 1125(a))**

7          38.    Riot incorporates herein by reference the averments of paragraphs 1

8    through 37 as though fully set forth herein.

9          39.    Riot, as the owner of all common law right, title, and interest in and to

10   the RIOT Marks, has standing to maintain an action for false designation of origin

11   and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

12         40.    Defendants have, without authorization, on or in connection with its

13   services, used in commerce marks that are confusingly similar to the RIOT Marks,

14   and/or have made false designations of origin which are likely to cause (and/or

15   have caused) confusion or mistake or to deceive as to the affiliation, connection or

16   association of Defendants with Riot, and/or as to the origin, sponsorship or

17   approval of Defendants' services and commercial activities.

18         41.    Riot is informed and believes, and on that basis avers, that the conduct

19   of Defendants has been knowing, deliberate, willful, and has been intended to

20   cause confusion, or to cause mistake, or to deceive, in blatant disregard of Riot's

21   rights.

22         42.    Defendants knew or by the exercise of reasonable care should have

23   known that the adoption and commencement of use in commerce and continuing

24   use of marks that are confusingly similar to the RIOT Marks would cause

25   confusion, mistake, or deception among purchasers, users and the public.

26         43.    Defendants' wrongful conduct has permitted or will permit them to

27   make substantial sales and profits on the strength of Riot's marketing, advertising,

28   sales and consumer recognition.  As a direct and proximate result of Defendants'

Mitchell
Silberberg &
Knupp LLP

11464056.1

wrongful conduct, as alleged herein, Riot has been deprived and will be deprived of the value of its RIOT Marks as a commercial asset in an amount as yet unknown but to be determined at trial.  Riot seeks an accounting of Defendants' profits, and requests that the Court grant Riot three times that amount.

44.     Defendants' acts and omissions have caused and, unless restrained by this Court, will continue to cause Riot and the public to suffer great and irreparable damage and injury through, *inter alia*, (a) a likelihood of confusion, mistake and deception among the relevant purchasing public and trade as to the source of Defendants' infringing services; and (b) the loss of Riot's valuable goodwill and business reputation symbolized by its RIOT Marks.  Riot has no adequate remedy at law.

45.     Based on Defendants' wrongful conduct, Riot is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

46.     Upon information and belief, Defendants have deliberately and willfully used the Infringing Marks in an attempt to capture initial consumer attention and to trade upon the enormous goodwill, reputation and selling power developed by Riot in connection with the RIOT Marks, as well as in order to confuse consumers as to the origin and sponsorship of Defendants' services.  Upon information and belief, the intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a), and Riot is further entitled to its attorneys' fees and costs of suit herein pursuant to 15 U.S.C. § 1117.

**THIRD CLAIM FOR RELIEF**

**UNFAIR COMPETITION**

**(Common Law and Cal Bus. & Prof. Codes 17200, 17208, and 17500, *et seq.*)**

47.    Riot incorporates herein by reference the averments of paragraphs 1 through 46, as though fully set forth herein.

48.    Defendants have, by reason of the foregoing acts, engaged in unfair and fraudulent business practices.

49.    Defendants' acts have impaired or will impair Riot's business and have otherwise adversely affected Riot's business and reputation by use of unfair and fraudulent business practices in violation of California common law and the California Business & Professions Code, including Sections 17200 to 17208, 17500, *et seq.*, and the common law.

50.    Riot is informed and believes, and on that basis avers, that Defendants' acts have caused and, unless restrained by this Court, will continue to cause Riot to suffer great and irreparable damage and injury.  Riot has no adequate remedy at law.

51.    Upon information and belief, Riot avers it will suffer loss of profits and other damage as a result, in an amount to be proven at trial.  On the statutory unfair competition claim, Riot seeks only disgorgement of profits and does not seek damages at law.

WHEREFORE, as to all Counts of this Complaint, Riot requests that this Court enter a judgment and declaration in favor of Riot and against Defendants as follows:

A.    Preliminarily and permanently enjoining and restraining Defendants, all entities under their control, as well as their licensees, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents, and any other persons or entities acting on behalf of Defendants or with

Defendants' authority, from:

(1)    using, selling, offering for sale, holding for sale, advertising or promoting any goods or services under or in connection with any trade name, trademark, service mark, or other designation of origin that is comprised in whole or in part of the RIOT Marks, or any terms, designs or styles confusingly similar thereto; or

(2)    doing any act or thing that is likely to induce the belief that Defendants' goods or services, or activities are in some way connected with Riot and/or Riot's business, or that is likely to injure or damage Riot or its RIOT Marks; and

B.    Ordering Defendants to:

(1)    pay Riot the compensatory damages sustained by Riot as a result of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts alleged herein;

(2)    pay Riot punitive damages as a consequence of the willful and wanton acts alleged herein;

(3)    account for and pay over to Riot all gains, profits and advantages derived from the unlawful acts alleged herein and/or as a result of unjust enrichment;

(4)    deliver up for destruction all materials that bear the Infringing Marks, including without limitation all letterhead, signage, brochures, labels, stickers, displays, written materials and other promotional materials;

(5)    deliver up for destruction all products that infringe on the RIOT Marks;

(6)    reimburse Riot for the costs it has incurred in bringing this action, together with its reasonable attorneys' fees and disbursements;

(7)    pay Riot's costs of corrective advertising; and

1    C.    Awarding Riot such other and further relief as this Court may deem

2    equitable.

3

4    DATED:  October 7, 2019          MARC E. MAYER
                                      KARIN G. PAGNANELLI
5                                     MARK C. HUMPHREY
                                      MITCHELL SILBERBERG & KNUPP LLP
6

7

8                                     By:  /s/ *Marc E. Mayer*
                                           Marc E. Mayer
9                                          Attorneys for Plaintiff
                                           Riot Games, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

11464056.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiff Riot Games, Inc. demands a trial by jury of all issues triable of right by jury.

DATED:  October 7, 2019             MARC E. MAYER
                                    KARIN G. PAGNANELLI
                                    MARK C. HUMPHREY
                                    MITCHELL SILBERBERG & KNUPP LLP


                                    By:  */s/ Marc E. Mayer*
                                         Marc E. Mayer
                                         Attorneys for Plaintiff
                                         Riot Games, Inc.

Mitchell
Silberberg &
Knupp LLP

11464056.1